IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
JUL 0 2 2012
CHRIS R. JOHNSON, Clerk
By _____
Deputy Clerk

| | |
|---|---|
| SOUTHERN BAKERIES, LLC, | ) |
| Petitioner/Plaintiff, | ) |
| v. | ) CIVIL ACTION NUMBER: |
| BAKERY, CONFECTIONARY, TOBACCO WORKERS AND GRAIN MILLERS INTERNATIONAL, LOCAL NO. 111/LOUIS PAGE | ) 12-4071 |
| Defendant(s). | ) |

## PETITION TO VACATE ARBITRATION AWARD

Petitioner, Southern Bakeries, LLC ("Southern Bakeries" or the "Company"), by and through counsel, brings this action against the Bakery, Confectionary, Tobacco Workers and Grain Millers International, Local No. 11 (the "Union") seeking to vacate an arbitration Opinion and Award, obtain relief from the remedy awarded therein, and stay enforcement of the Award pending this Court's determination as to its validity. In support hereof, Southern Bakeries alleges as follows:

### PARTIES

1.  Southern Bakeries, an Arkansas limited liability company, operates a bakery located in Hope, Arkansas. At all times relevant to this dispute, Southern Bakeries was an employer within the meaning of Section 2(2) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(2), and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

2.  At all times relevant hereto, Southern Bakeries was engaged in an industry

affecting commerce within the meaning of the LMRA, 29 U.S.C. § 185.

3. At all times relevant hereto, the Union was a labor organization as defined in Section 2(5) of the NLRA, 29 U.S.C. § 152(5), and Section 301 of the LMRA, 29 U.S.C. § 185, and was recognized by Southern Bakeries as the exclusive collective bargaining representative for a bargaining unit of non-supervisory production and sanitation employees located at the Company's Hope, Arkansas facility.

4. At all times relevant hereto, the Union represented employees in an industry affecting commerce within the meaning of 29 U.S.C. § 185 and represented employees in this judicial district for the purpose of collective bargaining.

## JURISDICTION AND VENUE

5. The claim asserted in this Petition is brought under Section 301 of the LMRA, 29 U.S.C. § 185.

6. Jurisdiction of this Court is based on Section 301 of the LMRA, 29 U.S.C. § 185, and 29 U.S.C. §§ 1331 and 1337.

7. Venue in this District is proper under 28 U.S.C. § 1391 and 29 U.S.C. § 185. This is a judicial district in which the Union's duly authorized officers or agents at all relevant times have been engaged in representing or acting for employee members, and in which the Union maintains an office.

8. The arbitration at issue took place at the Super 8 Motel, I-30 and Arkansas State Highway 4, Hope, Arkansas.

9. This action is timely filed under the Arkansas Uniform Arbitration Act, Ark. Code Ann. § 16-108-223(b), and the Federal Arbitration Act, 9 U.S.C.A. § 12, as it was filed within 90 days after Southern Bakeries received notice of the Arbitrator's Opinion and Award that is the

subject of this action.

## NATURE OF THE ACTION

10. The arbitration at issue arose out of a dispute regarding the discharge of Louis Page ("Mr. Page" or "Grievant"), a former Break Person employed by Southern Bakeries at its Hope, Arkansas facility. The arbitration raised the question of: "Whether the Company had just cause to terminate the Grievant's employment. If not, what was the appropriate remedy?"

11. The collective bargaining agreement ("CBA") between the Company and the Union contains a management rights provision giving the Company the right to establish work rules and disciplinary procedures for its operations.

12. Those work rules are contained in the Employee Handbook, which applies to all employees. The Work Rules consist of three groups of disciplinary violations. Group A Rule infractions are considered serious and typically result in immediate termination with no progressive disciplinary steps. Group B rules and Group C rules pertain to less serious infractions and attendance, respectively, and provide for progressive discipline.

13. The Group A rules include Group A, Rule 6, Insubordination, which is defined to include "disobeying or failing to carry out the instruction of a supervisor", and Group A, Rule 22, Job Abandonment, which is defined to include "leaving an assigned work area without permission – i.e. walking off the job."

14. The Company discharged Mr. Page for violation of Group A Rules 6 and 22 based on Mr. Page leaving his assigned work area without permission and disregarding a managerial instruction to remain in a certain area pending a meeting.

15. Mr. Page admitted leaving his assigned work area without permission and disregarding a managerial instruction to remain in a certain area pending a meeting.

3

16. The Arbitrator found that Mr. Page was well versed in the Company's work rules and that Mr. Page had previously received notice that leaving his assigned work area without permission from a supervisor constituted a Group A rule violation.

17. The Arbitrator also found that from January 2009 to December 2011, Southern Bakeries had discharged ten (10) employees for Group A rule violations, with six (6) of the ten (10) discharges involving employees who left their assigned work areas. The Arbitrator further found that Southern Bakeries had offered Last Chance Agreements ("LCA") in lieu of discharge to nine (9) employees during the 2010 and 2011 calendar years.

18. Based on this past practice evidence, the Arbitrator determined that if an employee was not discharged the default discipline for Group A rule violations is a LCA and that there was no evidence that the Company had ever offered suspensions, final warnings, or other levels of progressive discipline for Group A offenses.

19. Despite Page's admissions, the Arbitrator defined job abandonment and insubordination differently from how those terms are defined by the parties in the CBA and utilized the Arbitrator's own definitions to hold that the Company's application of its Group A rules was not reasonable under the circumstances presented.

20. While the Arbitrator did find that Mr. Page committed a Group A rule violation, she did not institute the proper discipline that had been agreed to by the parties' through the negotiation of the CBA.

21. Further, the Arbitrator inserted a progressive disciplinary requirement in the Group A rule disciplinary process, which had not been agreed upon by the parties or been part of the Company's past practice, to impose suspension as the remedy for Mr. Page's misconduct.

22. In so doing, the Arbitrator manifestly disregarded the Grievance and Arbitration Procedure provision of the parties' CBA expressly providing that in arriving at her decision "the arbitrator shall not change or add to any provisions of this [CBA]".

23. The Court should vacate the Opinion and Award because the Arbitrator exceeded the authority accorded to her by the CBA between the parties. The Opinion and Award is contrary to the terms of the parties' CBA and does not draw its essence from that CBA.

## FACTS

24. At all times relevant to this proceeding, Southern Bakeries and the Union were parties to a CBA. A copy of the CBA is attached hereto as Exhibit A.

25. Section 2.02 of the CBA provides that the Company "may discharge employees for just cause."

26. The managerial rights sections of the CBA, Section 2.02 and 2.04, provide the Company with the authority to establish work rules and disciplinary procedures necessary for the operation of the business. These rules are contained in the Company's Employee Handbook and identified as Facility Rules and Disciplinary Procedures.

27. The Company's Facility Rules and Disciplinary Procedures identify three groups of disciplinary violations. Group A rule violations are considered serious and typically result in immediate termination with no progressive disciplinary steps. Group B rule violations are less serious and Group C rule violations pertain to attendance. Group B and Group C rule violations are subject to a progressive disciplinary process.

28. Group A rule violations include Group A, Rule 6, Insubordination, which is defined to include "disobeying or failing to carry out the instruction of a supervisor", and Group A, Rule 22, Job Abandonment, which is defined to include "leaving an assigned work

5

area without permission – i.e. walking off the job."

29. Article 4 of the CBA provides a procedure by which the Union and its members may grieve a violation of the CBA.

### A. Mr. Page's Employment History

30. Mr. Page commenced employment with Southern Bakeries when it started business in 2005. At all times relevant hereto, Mr. Page was employed by Southern Bakeries as a Break Person assigned to the Company's Variety Department on a first shift schedule. He reported to Phil Ross, Variety Department Supervisor, who in turn reports to Dan Banks, Plant Manager/Director of Manufacturing.

31. Mr. Page was the Union's Chief Steward at Southern Bakeries since 2005, he participated in all the CBA negotiations since that time, and he is a signatory to the current CBA in his Chief Steward capacity. As Chief Steward, Mr. Page was responsible, among other things, for accepting, investigating, and filing grievances and for representing employees in disciplinary meetings. He received a copy of the Company's Employee Handbook with Work Rules during orientation and was "very familiar" with the CBA and Work Rules.

32. As with Southern Bakeries' other production lines, the Variety Department production line is fast moving and continuous; it does not stop for breaks. Instead, Southern Bakeries provides Break employees, including Mr. Page, who fill in for employees while they take their breaks (or otherwise have to leave the line) so that there is no down time.

33. Southern Bakeries' Group A Rule 22, which prohibits employees from leaving their assigned work area without permission, is designed to facilitate the continuous production process, promote safety, and ensure the production line is monitored at all times to prevent or curtail accidents so the Company does not lose money in ruined product, down time, and

overhead.

34.     Reiterating its written policies and procedures, on May 16, 2011, the Company posted its policies regarding breaks, which stressed that, "Employees must not leave their assigned work area, i.e. be out of their assigned work area without permission from supervision" and provided that employees who violated this policy were subject to disciplinary action up to and including discharge.  This notice was also included in each employee's, including Mr. Page's, May 20, 2011, paycheck.

### B. Mr. Page Willfully Commits Group A Violations

35.     On August 19, 2011, Mr. Page commenced his eight-hour shift at 8 a.m., and began covering breaks for four people as usual.  He then took his own fifteen minute break from 9:30 to 9:45 a.m.  Upon returning from his break, Mr. Page went to the Shop area and relieved the Variety Department mixer employee for his break.

36.     At approximately 10:00 a.m., just fifteen minutes after Mr. Page had returned from his break and was supposed to be covering the station for the mixer employee, he left his work area to use the rest room without seeking permission from his supervisor.  Mr. Page admitted that he could and should have paged his supervisor for permission.  Mr. Page testified that it was "common practice" for him to just leave the job without seeking supervisory permission when he has to go to the restroom but the Arbitrator found that the Company was not aware of this.

37.     Later that day, Mr. Banks told Mr. Page that he was needed to take care of a disciplinary matter with another employee.  Since the employee spoke only Spanish, Mr. Banks took Mr. Page and the Hispanic employee to the main lobby and instructed them to wait there until the translator arrived.  Instead of doing what Mr. Banks instructed, Mr. Page remained

seated for just a "couple of minutes," then left. The translator arrived about five or ten minutes later and Mr. Banks went to the lobby to get Mr. Page and the employee, but Mr. Page was gone.

38. The Company determined that Mr. Page had committed a Group A, Rule 22 violation, of job abandonment by leaving his assigned work area without permission, and had committed a Group A, Rule 6 violation, of insubordination by "disobeying or failing to carry out the instruction of a supervisor", either one of which was a dischargeable offense. In lieu of termination, the Company offered Mr. Page an LCA. Mr. Page refused to sign an LCA, so the Company terminated his employment.

### C. Mr. Page Grieves His Suspension

39. On September 22, 2011, the Union filed a grievance alleging "unjust termination and unfair labor practice."

40. The Company denied the grievance at all levels, and the Union elevated the grievance to arbitration.

### D. The Arbitration Proceeding

41. An arbitration hearing was held on February 7, 2012, before Arbitrator Maretta Comfort Toedt.

42. At the hearing, the parties stipulated that the following issue would be submitted to Arbitrator Toedt: "Did the Company have just cause to terminate the Grievant, Louis Page? If not, what is the appropriate remedy?" See Opinion and Award of Arbitrator Maretta Comfort Toedt ("Opinion and Award") at 2 (attached hereto as Exhibit B).

43. On March 30, 2012, the parties submitted post-hearing briefs.

### E. The Arbitrator's Decision

44. On or about April 13, 2012, the parties received a copy of the Opinion and Award

issued by Arbitrator Toedt.

45. In her Opinion and Award, the Arbitrator found that Mr. Page admitted leaving his assigned work area without permission in violation of Company policy but concluded that this misconduct did not amount to "classic job abandonment."

46. The Arbitrator further found that Mr. Page admitted leaving the area after being instructed to wait there by Mr. Banks, he did not give a satisfactory explanation for why he left that area, and he could have asked permission to leave but did not do so. Nonetheless, the Arbitrator, substituting her own definition for that agreed to by the Company and the Union, concluded that Mr. Page's misconduct did not "fit the classic definition of insubordination." Opinion and Award at 13. However, the Arbitrator did find that Mr. Page committed a Group A rule violation. Opinion and Award at 11-12.

47. The Arbitrator also acknowledged that the Company had uniformly enforced its policies for Group A violations because during the 2009 to 2011 calendar years, the Company discharged ten employees, six of whom were discharged for leaving their assigned work areas without permission. Opinion and Award at 18, n.19. Moreover, the Arbitrator acknowledged that during 2010 and 2011 the Company had also offered LCAs in lieu of discharge to nine employees for Group A violations. Opinion and Award at 5.

48. The Arbitrator determined based on past practice that if an employee was not discharged the default discipline for Group A rule violations is a LCA. The Arbitrator determined that there was no evidence that the Company had ever offered suspensions, final warnings, or other levels of progressive discipline for Group A offenses. Opinion and Award at 18.

49. Despite Mr. Page's admitted violations of Group A Work Rules and the

Company's past disciplinary practice, the Arbitrator concluded that the Company did not have just cause to terminate his employment after he and the Union refused to sign the LCA.

50.     The Arbitrator also concluded that Southern Bakeries was obligated to use progressive discipline before termination and imposed a fourteen day suspension as the appropriate discipline for Mr. Page's Group A violations. Opinion and Award at 19-20.

51.     The Arbitrator determined that the appropriate remedy was suspension even though the parties never agreed to a progressive discipline system for Group A rule violations, one had not been used in the past, and the Grievance and Arbitration Procedure in the CBA specifically provides that "[i]n arriving at his decision, the arbitrator shall not change or add to any provisions of this Agreement." See CBA (Exhibit A) Section 11.03, at p. 22; Opinion and Award at 20.

52.     The Opinion and Award should be vacated because the Arbitrator did not render a decision that drew its essence from the parties' CBA and she exceeded the scope of her authority under that contract.

## CLAIM FOR RELIEF

53.     Petitioner repeats and re-alleges paragraphs 1-52 as though fully set forth herein.

54.     As a result of the foregoing, the Opinion and Award should be vacated and set aside on the grounds that:

    a.    the Arbitrator exceeded the authority granted her under the terms of the CBA;

    b.    the Arbitrator acted in contravention of the terms of the CBA;

    c.    The Arbitrator evidenced a manifest disregard of the terms of the CBA;

    d.    The Opinion and Award fails to draw its essence form the CBA;

and

    e.    the Award is based on an impermissible modification, addition to, variance, change, removal, or disregard and/or abolishment of the provisions of the CBA, in violation thereof.

55.    Petitioner has no adequate remedy at law, as only a judgment vacating the Arbitration Opinion and Award will provide Petitioner with the relief required under these circumstances.

56.    There has been no prior request for the relief sought herein.

WHEREFORE, Petitioner Southern Bakeries, LLC respectfully requests that this Court grant judgment staying the enforcement of the Award and vacating the Arbitrator's Opinion and Award in its entirety and award such other relief as may be just and proper.

Respectfully submitted,

Cross, Gunter, Witherspoon & Galchus, P.C.
5401 Rogers Avenue, Suite 200
Fort Smith, Arkansas 72903
Telephone: (479) 783-8200
Facsimile: (479) 783-8265

By: /s/Benjamin H. Shipley, III
Benjamin H. Shipley, III, ABA 80130
bshipley@cgwg.com

*-and-*

David L. Swider, to be entered *pro hac vice*
Sandra Perry, to be entered *pro hac vice*
Jonathan L. Mayes, to be entered *pro hac vice*
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000; (317) 684-5173 (Fax)
DSwider@boselaw.com
SPerry@boselaw.com
JMayes@boselaw.com

Attorneys for Petitioner,
Southern Bakeries, LLC

2176586_4.