IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


SOUTHERN BAKERIES, LLC                                                    PLAINTIFF

V.                                    Case No. 4:12-CV-4071

BAKERY, CONFECTIONARY,
TOBACCO WORKERS AND GRAIN
MILLERS INTERNATIONAL,
LOCAL NO. 111                                                            DEFENDANT


## MEMORANDUM OPINION

This matter comes before the Court upon cross motions for summary judgment filed by

Plaintiff Southern Bakeries, LLC and Defendant Bakery, Confectionary, Tobacco Workers and Grain

Millers International, Local No. 111.  ECF Nos. 19 and 22.

## I.  BACKGROUND

Plaintiff Southern Bakeries, LLC produces a variety of baked goods at its facility in Hope,

Arkansas.  At the time in question, a collective bargaining agreement was in place between Plaintiff

and Defendant Bakery, Confectionary, Tobacco Workers and Grain Millers International, Local No.

111.  This agreement allowed Plaintiff to make "reasonable rules, not inconsistent with the specific

provisions of this Agreement necessary for the operation of the business."  The dispute arose when

Plaintiff discharged Louis Page for violating two specific work rules.  Defendant grieved the

discharge, and Plaintiff and Defendant submitted the dispute to arbitration.  Finding that Page's

misconduct was not "just cause" for termination, the arbitrator ordered that Page be suspended for

fourteen (14) days without pay in lieu of discharge and awarded back pay.  Plaintiff commenced this

action to vacate the arbitration award, arguing that it did not draw its essence from the collective

bargaining agreement.  Defendant counterclaimed for enforcement of the award.

**A.  The Relevant Collective Bargaining Agreement Provisions and Work Rules**

Under the management rights provision of the collective bargaining agreement, Plaintiff has the right to establish rules and disciplinary procedures for its operations.  These rules, found in the employee handbook, consist of three groups of disciplinary violations: Groups A, B, and C.  Group A work rules are considered the most serious and infractions of these rules "often result in termination."  Group A rules include insubordination and job abandonment.  The work rules state that insubordination includes but is not limited to the following: (a) "[d]isobeying or failing to carry out the instruction of a supervisor; or (b) [i]nterfering with a supervisor in the performance of his/her duties."  The work rules further state that job abandonment is "failure to timely notify [Plaintiff] of an absence—i.e. no call/no show without an excused reason for two (2) working days without prior notification to the [Plaintiff], leaving an assigned work area without permission—i.e. walking off the job."  Group B and C work rules encompass less serious infractions and are subject to a progressive disciplinary system.

In deciding upon the appropriate disciplinary action, Plaintiff's Vice President and General Manager considers the type of rule infraction and reviews the employee's personnel file to determine if there are any mitigating circumstances.  Plaintiff's past practice concerning Group A work rules violations is that Plaintiff either discharges the employee or offers him or her a Last Chance Agreement ("LCA").  The purpose of the LCA is to give employees an opportunity to correct their behavior and to remain employed.  The LCA provides that the employee continues employment but that any future work rules violation will result in termination.

**B.  The Grievance Dispute**

Page was employed as a break person, meaning that he filled in for employees who were on breaks or otherwise had to leave the production line.  The production line is fast moving and does

not stop for breaks.  If something went awry on the production line because of someone not being in his/her key position, the costs to Plaintiff could be very high.  On May 16, 2011, Page returned from his fifteen-minute break and relieved a mixer employee.  During the next fifteen minutes, Page loaded the mixer, weighed the ingredients, and then left his work station to go to the restroom.  Page did not notify his supervisor as required before leaving his work station to go to the restroom.

After he visited the restroom, Page proceeded to the office of Dan Banks, Director of Manufacturing, to discuss a grievance with him involving another employee.  Page was the Chief Steward and was responsible for, among other things, accepting, investigating, and filing grievances and for representing employees in disciplinary meetings.  Banks asked Page if he left his work station unattended, and Page replied that he had.  Banks then asked Page's supervisor if he knew that Page was away from his work station, and the supervisor replied that he did not know.  Nevertheless, Banks needed Page to participate in a disciplinary meeting with a Hispanic employee and informed Page that the issue of him leaving his work station unattended would be addressed at a later time.  According to Plaintiff, Page's absence from the mixer did not, "by sheer good fortune, result in production problems or losses."  Banks called Page's supervisor and instructed him to fill in for Page because Page was needed for an employee disciplinary meeting.

Banks told Page to wait in the main lobby until the interpreter arrived for the meeting.  After a "couple of minutes," Page left the lobby without telling anyone and went to the restroom.  Page also went to tell his supervisor that he was going to be tied up in a meeting for a little while, even though Page was present when Banks relayed this same information to Page's supervisor earlier.  Banks chose to the use the restroom in the plant, which was much further away than the restroom right off the lobby.  The interpreter arrived and when Banks went to the lobby to get Page, he was not there.

-3-

Page arrived shortly thereafter.  Later that day, Page was informed that his misconduct that day was serious and would be addressed at a later time.

After an investigation, Plaintiff determined that Page violated two Group A work rules: insubordination (for disobeying Banks's instruction to stay in the lobby) and job abandonment (for leaving his work station without permission).  In lieu of discharge, Plaintiff decided to offer Page an LCA.  Page insisted that he did not need permission to go to the restroom and refused to sign the LCA.  So, Plaintiff discharged him.  Defendant filed a grievance alleging that Page was discharged without just cause.

Plaintiff and Defendant held a meeting to discuss Page's discharge.  At the meeting, Page stated that it was his practice not to tell anyone when he was going to be away from his work station for just a few minutes.  Plaintiff again offered Page the LCA, but Page refused to sign it.  Defendant sent Plaintiff a letter proposing changes to the LCA.  Plaintiff offered a revised LCA with a "sun downer" provision providing that Page would be immediately terminated for a Group A rule violation but that a Group B rule violation would result in discharge only if it occurred within the next ninety (90) days.  Defendant rejected the proposed change, and Page's grievance was submitted to arbitration.

### C. The Arbitration Proceeding

The arbitrator issued her decision on April 10, 2012.  She stated that the work rules at issue were reasonable but that they were not reasonably applied under the circumstances.  She noted that Page was terminated for violating the job abandonment rule, which includes "leaving an assigned work area without permission—i.e. walking off the job."  She interpreted this provision to mean leaving with an intent not to return and noted that Page left his work assignment temporarily without

-4-

permission to go to the restroom. She concluded that Page's conduct "more closely falls into the category of a violation of [Plaintiff's] break policies rather than classic job abandonment."

The arbitrator further concluded that Page did not violate the insubordination rule when he left the lobby area without permission from Banks. According to the work rules, insubordination includes "[d]isobeying or failing to carry out the instruction of a supervisor." The arbitrator noted that Page did not refuse to obey the instruction but "simply decided on his own that he had time to go to the restroom in another area of the plant and talk to [his supervisor]." She further noted that Page intended to return to the lobby area and that he did indeed return. She decided that the application of the insubordination rule was not "reasonable under the circumstances presented."

The arbitrator sustained the grievance and found that Plaintiff had just cause to suspend Page but did not have just cause to terminate him. She converted his discharge into a 14-day suspension and awarded back pay (less the suspension and any interim earnings), seniority, and benefits as if he had never been terminated.

## II. LEGAL STANDARD

Plaintiff asks this Court to vacate the arbitrator's decision because she exceeded her authority, decreed her own brand of industrial justice, and ignored the plain language of the collective bargaining agreement.

Federal policy encourages the private resolution of labor disputes by arbitration. *Coca-Cola Bottling Co. v. Teamsters Local 688*, 959 F.2d 1438, 1440 (8th Cir. 1991). Except in limited circumstances, courts are required to defer to the arbitrator's interpretation. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). A court may not vacate an arbitration award merely because its construction of the agreement differs from the arbitrator's. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960). If the arbitrator was "even arguably

construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38. A court may vacate an arbitrator's decision only when the arbitrator issues an award that does not "'draw its essence from the contract,' because it reflects instead the arbitrator's 'own notions of industrial justice.'" *Alcan Packaging Co. Graphic Commc'n Conference, Int'l Bhd. of Teamsters & Local Union No. 77-P*, 729 F.3d 839, 841 (8th Cir. 2013).

### III. DISCUSSION

The parties stipulated to the following statement of the issue before the arbitrator: Did the company have just cause to terminate the grievant, Louis Page? If not, what is the appropriate remedy? The arbitrator concluded that Plaintiff did not have just cause to terminate Page and that the appropriate remedy was a 14-day suspension.

Plaintiff contends that the arbitrator ignored the express definitions of "job abandonment" and "insubordination" in the agreement and substituted her own definitions for these terms. The arbitrator did mention that the circumstances presented do not fit the "classic" definitions of these two terms; however, she also interpreted the meanings of these terms as set forth in the agreement and work rules. The terms are not as black and white or as "plain" as Plaintiff makes them out to be. Job abandonment, pursuant to the agreement, does cover "leaving an assigned work area without permission." The agreement, however, goes on to give an example of this conduct as "walking off the job." This example creates some ambiguity as to whether one breaks this rule when he/she does not intend to permanently leave the job or to desert the job. The arbitrator decided that Page did leave his work area without permission but that the did not "walk off the job."

Insubordination, pursuant to the agreement, is disobeying the instruction of a supervisor. The arbitrator decided that Page's conduct did not fit this description. The arbitrator stated that Page did

not disobey his supervisor's instruction to wait in the lobby for the interpreter when Page left the lobby temporarily to use the restroom.  Page always intended to return (and did return) to the lobby and thought that he had enough time to use the restroom and speak with his supervisor before the interpreter arrived.

The arbitrator analyzed and interpreted the text of the collective bargaining agreement, which supports the conclusion that the judgment drew its essence from the agreement.  She expressly referred to the definitions and examples of insubordination and job abandonment found in the work rules and applied these definitions to the conduct at issue.  The fact that she found that Page's conduct did not fit within these definitions does not mean that she ignored the language in the agreement.  She at least arguably construed the relevant provisions of the contract.

Plaintiff contends that she committed serious error in her interpretation.  Such a mistake, however, is not sufficient to set aside the award.  Erroneous textual analysis does not justify disregarding the decision of the arbitrator agreed upon by the parties to resolve their dispute.  "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the [agreement], the courts have not business overruling [her] because their interpretation of the [agreement] is different from hers."  *Alcan Packaging Co.*, 729 F.3d at 843 (quoting *Enter. Wheel & Car Corp.*, 363 U.S. at 599).

The arbitrator analyzed whether Page had committed the offenses alleged by Plaintiff and concluded that he had not.  She stated that Page's termination was not for just cause[1] because

---

[1] The agreement states that Plaintiff had the right to discharge employees for "just cause" but did not define the term.  Thus, whether Page was discharged for good cause was a matter of contract interpretation within the arbitrator's domain.  *See Trailmobile Trailer, LLC v. Int'l Union of Elec., Electrical, Salaried, Mach. and Furniture Workers, AFL-CIO*, 223 F.3d 744, 747 (8th Cir. 2000).  The arbitrator had the authority to harmonize any discordant provisions within the agreement relating to the discretionary authority granted Plaintiff and the just cause requirements limiting that authority.  *Id*.  Here, the arbitrator decided that the

-7-

Plaintiff's application of the specific work rules at issue was unreasonable under the circumstances. She did conclude, however, that Page's misconduct warranted disciplinary action.  She then specifically weighed the gravity of Page's misconduct against his work record and fashioned an appropriate remedy that drew its essence from the agreement.  In doing this, the Court cannot find that the arbitrator exceeded her authority, ignored the plain language of the collective bargaining agreement, or decreed her own brand of industrial justice.

## IV.  CONCLUSION

For the reasons stated above, the Court upholds the April 10, 2012 arbitration decision. Defendant's Motion for Summary Judgment (ECF No. 22) is **GRANTED**.  Plaintiff's Motion for Summary Judgment (ECF No. 19) is **DENIED**.  Defendant asserts in a reply brief that it should be awarded costs and attorney's fees but has not filed a formal motion requesting such.  This issue is not before the Court, and Plaintiff's Motion to Strike this issue from the reply brief is **DENIED**. ECF No. 32.  Should Defendant file a motion for attorney's fees, Plaintiff will have the opportunity to respond.

IT IS SO ORDERED, this 27th day of February, 2014.


/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

just cause provision in the agreement conflicted with certain provisions found in the work rules section of the handbook as applied to Pace's conduct.  The agreement provides that, if such a conflict exists, the agreement will govern.  Thus, it was the arbitrator's prerogative and duty to reconcile the provisions to determine whether there was just cause for Pace's termination.